IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE E. THOMAS,** | : | **Civ. No. 1:21-CV-1040** |
| | : | |
| v. | : | |
| | : | |
| **TRANSCORE, LP et al.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Plaintiff Linda Brewer's motion for remand. (Doc. 17.) For the reasons set forth below, the motion will be denied without prejudice.

### I.  BACKGROUND

The following facts from Plaintiff's complaint are taken as true for the purpose of resolving the instant motion. Defendant Pennsylvania Turnpike Commission ("PTC") is a transportation agency of the Commonwealth of Pennsylvania that operates and maintains the Turnpike and other roadways within Pennsylvania. (*See* Doc. 1-2 ¶¶ 13, 29-30.) PTC is in charge of operating the Pennsylvania Turnkpike's E-ZPass system, an electronic tolling system that automatically withdraws toll payments from customers' pre-paid accounts. (See *id.* ¶¶ 18, 29, 30.) Various toll plazas along the Turnpike are equipped with E-ZPass equipment that is used to electronically assess tolls on users with E-ZPass transponders attached to their vehicles. PTC is a member of the E-ZPass Group, which facilitates the use of the E-ZPass system across multiple states, including Pennsylvania. (*Id.* ¶¶ 19-24.) Users who obtain E-ZPass transponders from a participating state agency

1

may use them to travel on roadways operated by other states' agencies, including the Turnpike. (*Id.* ¶ 22.)

Defendant Transcore is a Delaware limited corporation with a principal place of business in Tennessee, which holds contracts with the Commission to implement and maintain its tolling and EZ Pass systems. (*Id.* ¶ 14.) Transcore's duties on behalf of the Commission include obtaining transaction data from the electronic tolling systems; obtaining images of vehicle tags; obtaining violation images, video, and data; and providing the functionality to inventory, program, test, issue, recall, and track transponders. (*Id.* ¶¶ 50-61.)

In order to activate the E-ZPass account, the customer must provide PTC with a driver's license and the license plate number that will be associated with the transponder and agree to automatically or manually replenish their account. (*Id.* ¶ 24-25.) If the customer chooses to have their account replenish automatically, they must agree to secure an account with a credit card or ACH bank card and provide the card information to PTC on the application. (*Id.* ¶ 26.) The card is then used to automatically replenish the EZ-Pass account when it dips below $10, at which point the customer's credit or bank card is charged a minimum of $35 per transponder. (*Id.*)

According to the complaint, Plaintiff Julie E. Thomas opened an E-ZPass account with PTC in 2012 and regularly uses her transponder while driving on the Turnpike and toll roads in and around Pennsylvania. (*See id.* ¶ 64.) In June 2019, Thomas noticed that

her bank account was being debited more frequently by E-ZPass for replenishment of her account, and she eventually discovered that the additional debits did not coincide with the toll rate for her travel on the Turnpike. (*See id.* ¶¶ 67-68.) For example, Thomas found that her account had multiple debits of $10.00 for short trips that should have cost her a fraction of that amount based on where she entered and exited the roadway. (*Id.* ¶ 69.) Each of the $10.00 debits were listed as "V-TOLL" transactions and did not indicate the plaza where Thomas entered the roadway. (*Id.* ¶ 70.)

Upon discovering the discrepancies, Thomas contacted the E-ZPass Electronic Toll Collection Customer Service Center to inquire about the debits. The Service Center responded by "accus[ing] [Thomas], without basis, of incorrectly mounting the transponder to her windshield." (*Id.* ¶¶ 72-73.) Yet it also informed her that the transponder for her vehicle needed to be replaced. (*Id.* ¶ 72.) The Service Center thereafter refunded some of Thomas's money back to her E-ZPass account, but not to her bank account. (*Id.* ¶ 73.) It also sent Thomas a replacement transponder, which appeared to be identical to her original one, yet Thomas was still sporadically assessed V-TOLL debits against her account despite the transponder being affixed to the same location in her vehicle. (*See id.* ¶¶ 74-75.)

In November 2019, Plaintiff again contacted the Service Center, which refunded her additional money to her EZ-Pass Account, and again claimed that the V-TOLL debits were caused by an incorrectly-mounted transponder. (*Id.* ¶ 75.) A few days later, Thomas's E-ZPass account was assessed even more V-TOLL debits, but since the account was so

inflated from prior refunds, she never received any replenishment notifications. (*Id.* ¶ 76.) Despite Thomas's partial refunds, she still has not received all the funds that were improperly debited from her bank account, and Defendants continue to earn interest on those debits that were refunded to her E-ZPass account. (*Id.* ¶ 77.)

In April 2021, Thomas initiated this action by filing a putative class action complaint in the Court of Common Pleas for Dauphin County, asserting claims for breach of contract, fraudulent misrepresentation, fraudulent concealment, negligent conversion, unjust enrichment, and violations of the UTPCPL. (Doc. 1-2.) According to the complaint, Defendants unlawfully charged Thomas, as well as thousands of other drivers with transponders that were properly affixed, excessive fees and penalties without any meaningful warning or notice. The complaint alleges that in many cases, the violations reported by Defendants were actually caused by their own malfunctioning or incompatible EZ-Pass technology, and attempts by consumers to appeal the fees run head long into a complicated dispute process and customer service representatives who provide incorrect and misleading information. Even where a refund is secured, the complaint alleges, the automatic replenishment feature of EZ-Pass means that the error results in funds being transferred from the consumer's bank account to their pre-paid EZ-Pass account, on which Defendants earn interest. Thomas seeks judgment against Defendants for injunctive and monetary relief on behalf of herself and the following class and sub-classes:

(1) Unreimbursed Class - All persons with a PTC E-ZPass account who were assessed V-Toll debits and not refunded;

(2) Credit Card Class - All persons who maintain an E-ZPass through PTC and who were assessed V-Toll fees that were withdrawn from their credit card and thereafter refunded by Defendants to their E-Z pass accounts, thereby not receiving a full refund because the money was not returned to their credit card and the individual still had to pay interest on the amounts withdrawn from the credit card;

(3) Bank Card Class - All persons who maintain an E-ZPass through PTC and who were assessed V-Toll fees that were withdrawn from their debit card and refunded to their E-ZPass accounts, thereby not receiving a full refund because the money was not returned to their bank account and they were not compensated for interest they would have earned from the funds while in their bank accounts; and

(4) Out-of-State Account Holders: All persons who maintain an EZ-Pass account through an out-of-state agency and were assessed V-Tolls, and either not refunded the money for the tolls or incurred additional expenses as a result of the policies of the out-of-state agency.

(*Id.* ¶ 79.)

After the complaint was filed, Defendants removed the action to this court. Plaintiff has filed a motion for remand under 28 U.S.C. § 1332(d)(4)(A)-(B), which has been fully briefed and is ripe for review. (Doc. 17.)

## II. DISCUSSION

Plaintiff has not shown that this case should be remanded under § 1332(d)(4)(B), which requires a district court to decline to exercise jurisdiction over a class action where the primary defendants, as well as two-thirds or more of all proposed class members, are citizens of the State in which the action was originally filed. The complaint names as defendants the PTC and TransCore, which is not a Pennsylvania citizen. It alleges that

TransCore is responsible for collecting fares, maintaining toll equipment, and maintaining the customer service center for the E-ZPass system, and it seeks to hold the company directly liable for five of its six causes of action. (*See e.g*., Doc. ¶¶ 53–56.) Plaintiff makes no substantive argument that Transcore does not have potential exposure to a significant portion of the class, and she does not seriously contend that TransCore would not sustain a substantial loss as compared to the PTC if found liable. Because she has failed to show that TransCore is not the "real target" of their allegations, remand is inappropriate under this section.

The same is true with respect to § 1332(d)(4)(A), which requires a district court to decline to exercise jurisdiction over a class action if four requirements are met. First, more than two-thirds of the members of all proposed plaintiff classes in aggregate must be citizens of the state in which the action was originally filed. Second, at least one defendant from whom significant relief is sought by class members and whose alleged conduct forms a significant basis for the claims must be a citizen of the state in which the action was originally filed. Third, the principal injuries resulting from the alleged conduct or any related conduct of each defendant must have been incurred in the state in which the action was originally filed. Fourth, there must not have been another class action filed asserting the same or similar claims against any of the defendants during the three-year period preceding the filing of the action.

Here, Plaintiff's motion for remand fails to satisfy the first requirement of § 1332(d)(4)(B) because it offers no evidence that more than two-thirds of the members of the proposed total class are citizens of Pennsylvania. *See Durnell v. Foti*, 2019 WL 4573247, at *3 (E.D. Pa. Sept. 20, 2019). Plaintiff relies on conclusions to argue that the two-thirds threshold is met, but the court cannot simply assume the citizenship of those who have driven on Pennsylvania's toll roadways. Even if there is a reasonable inference to be drawn that a majority of PTC's current EZ-Pass members are citizens of Pennsylvania, it would be impossible to estimate with any confidence the size of that majority, and the putative class that Plaintiff seeks to represent is substantially broader still, including out-of-state EZ pass holders and one-time PTC EZ-Pass holders who may no longer hold membership. *See In re Sprint Nextel Corp.*, 593 F.3d 669, 674 (7th Cir. 2010).

Despite Plaintiff's failure to satisfy her burden under § 1332(d)(4)(B), basic notions of fairness support her request for limited discovery on the matter. Plaintiff's motion makes plausible arguments that the putative class satisfies the two-thirds requirement, and it convincingly shows that the information she seeks is within the exclusive control of Defendants themselves. Accordingly, the court will deny Plaintiffs' motion for remand without prejudice and grant her request for a brief discovery period on the limited issue of whether she can satisfy the citizenship requirement under § 1332(d)(4)(B). At the close of 45 days, or after the discovery is complete, Plaintiff may refile her motion for remand. All

other discovery will be stayed for that period of time, and until such time as the court decides whether remand is appropriate.[1]

Dated: March 30, 2022

S/Sylvia H. Rambo  
United States District Judge

---

[1] Obviously, discovery on the matter would be futile if Plaintiff is unable to meet the other requirements of Subsection (d)(4)(B), but it appears likely that she can do so. Defendants argue that Plaintiff cannot satisfy the second requirement for remand because the PTC—the only Defendant from Pennsylvania—is entitled to dismissal since it is immune from liability for intentional torts. But Plaintiff also asserts a claim for negligent conversion, and it appears that such claims continue to be recognized under Pennsylvania law. *See Bolick v. Ne. Indus. Servs. Corp.*, No. 4439 C.D. 2019, 2021 WL 3642344, at *11 (Pa. Commw. Ct. Aug. 18, 2021) ("We recognize that conversion of property may result from negligence as well as specific intent"); *see also Borrero-Bejerano v. Dep't of Corr.*, No. 453 C.D. 2018, 2019 WL 489835, at *5 (Pa. Commw. Ct. Feb. 8, 2019; *Shore v. Dep't of Corr.*, 168 A.3d 374, 385 n.6 (Pa. Cmwlth. 2017) (collecting cases). While Defendants point to statements from the Pennsylvania Supreme Court to support the proposition that conversion is an intentional tort, the cases it cites are distinguishable and involved allegations of willful misconduct, while the substance of Plaintiff's allegations sound in negligence. As such, Defendants have not shown, at least for the purposes of this motion, that the PTC is entitled to qualified immunity.