IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE E. THOMAS (ON BEHALF OF HERSELF AND THOSE SIMILARLY SITUATED),** | : | **Civil No. 21-cv-1040** |
| | : | |
| | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **TRANSCORE, LP. and PENNSYLVANIA TURNPIKE COMMISSION,** | : | |
| | : | |
| | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

In this civil case involving the Pennsylvania Turnpike Commission's E-ZPass program, Defendants have moved to dismiss the complaint for lack of jurisdiction and for failure to state a claim. For the reasons set forth below, the motions will be granted in part and denied in part.

## I.   BACKGROUND[1]

The Pennsylvania Turnpike Commission is a transportation agency of the Commonwealth of Pennsylvania that operates and maintains the Turnpike and other roadways within Pennsylvania. (Doc. 1 ¶¶ 24, 41-42.) The Commission is charged with operating the Turnpike's E-ZPass program, which is an electronic tolling

---

[1] The following facts are taken from Plaintiff's amended complaint and accepted as true for the purpose of resolving the instant motions to dismiss.

system instituted in 2002 to allow vehicles equipped with E-ZPass transponders to bypass traffic and congestion at toll booths by using the electronic toll-collection lanes of toll roads without having to stop to pay tolls with cash. (*Id.* ¶¶ 4, 30-31.)

The Commission is a member of E-ZPass Group, which facilitates the use of the E-ZPass system across multiple states. (*Id.* ¶ 32.) Customers who obtain E-ZPass transponders from a participating state agency may use them to travel on roadways operated by other states' agencies. (*Id.* ¶ 34.) They are assessed a fee equal to the toll charged by the Commission or other E-ZPass agencies each time the E-ZPass transponder is read at a toll plaza. (*Id.* ¶ 163.) The E-ZPass program has been advertised as providing users with a discounted toll rate compared to the rate paid by drivers using the default toll-by-plate system. (*Id.* ¶ 33.)

To activate an E-ZPass account, a customer must provide the Commission with their driver's license and the license plate number that will be associated with the transponder. (*Id.* ¶ 36.) They are also required to agree to either automatically or manually replenish their account. (*Id.* ¶ 37.) If they choose to have their account automatically replenished, they must agree to secure the account with a credit or ACH bank card, which will be charged a minimum of $35 per E-ZPass transponder when the associated account dips below $10. (*Id.* ¶¶ 36-38.)

The Commission provides customers with a pre-printed E-ZPass Agreement (the "Agreement"). (*Id.* ¶ 16.) The Agreement explains, in pertinent part, that the

transponder remains property of the Commission and that the customer agrees to correctly mount, display, and use the transponder in accordance with the instructions provided by the E-ZPass Customer Service Center. In addition, it outlines the assessment of fees, as follows:

> A fee equal to the toll charged by the COMMISSION or other E-ZPass Agencies will be deducted from your account balance each time the E-ZPass transponder is read at a toll plaza. In the event that the E-ZPass transponder is not read successfully, you are responsible for payment of the toll.

(*Id.*) It further states that "[f]ailure to mount the E-ZPass transponder correctly may hinder toll collection and may subject [customers] to a fine." (*Id.*) The Agreement explains that the customer accepts the terms of the Agreement upon first use of the E-ZPass transponder.

The Commission "has entrusted all aspects of the implementation, maintenance, and toll collection of the E-ZPass system to [its agent,] TransCore." (*Id.* ¶ 6.) Defendant TransCore is a Delaware limited corporation with a principal place of business in Tennessee and holds contracts with the Commission to implement and maintain its tolling and E-ZPass systems. (*Id.* ¶ 14.) In carrying out its duty for the Commission, TransCore:

> Obtains transaction data from the electronic tolling systems; obtains images of vehicle tags; obtains violation images, video and data; process electronic toll collection transactions with data from both transponder based and license plate based video tolling; operates the E-ZPAss online account system that host account holders personal and financial information; bills account holders' financial institutions to

replenish their E-ZPass accounts; assess tolls and withdraw funds from E-ZPass.

(*Id.* ¶ 26) (cleaned up).

Plaintiff Julie Thomas ("Plaintiff") has routinely driven on the Pennsylvania Turnpike using an E-ZPass transponder. According to the amended complaint, Plaintiff opened an E-ZPass account with the Commission in 2012, and regularly used her transponder while driving on the Turnpike and other toll roads in and around Pennsylvania. (*Id.* ¶ 64.) In June 2019, Thomas noticed that her E-ZPass account was being replenished more frequently due to an increase in charges, and after looking into it, she discovered that the additional assessments did not coincide with the rates she should have been charged for her corresponding travel. (*Id.* ¶¶ 67-68.) For example, she noticed that her account had multiple $10 charges for short trips that should have cost her a fraction of that amount based on where she entered and exited the roadway. (*Id.* ¶ 69.) Each of these transactions were listed as "V-Toll" transactions ("V-Tolls"), which are fines the Commission assesses whenever a transponder fails to be electronically recognized. Upon discovering the excess charges and fines, Plaintiff contacted TransCore's Customer Service Center to inquire about the debits. (*Id.* ¶ 130.) The representative who took the call responded by "accus[ing] [Plaintiff], without basis, of incorrectly mounting the transponder to her windshield," yet also advised her that her transponder needed to be replaced. (*Id.* ¶¶ 72-73.) E-ZPass thereafter provided Plaintiff with a partial refund and sent her a

replacement transponder. Despite the replacement transponder and with it again being properly mounted, Plaintiff continued to be sporadically assessed V-Tolls against her account. (*Id.* ¶¶ 74-75.) In November 2019, Plaintiff again contacted the Customer Service Center, which refunded additional money to her E-ZPass Account, and again claimed that the debits were caused by an incorrectly mounted transponder. (*Id.* ¶ 75.) A few days later, Plaintiff's E-ZPass account was assessed even more V-Tolls, but since the account was so inflated from prior refunds, she never received any replenishment notifications. (*Id.* ¶ 76.) Plaintiff has yet to receive a full refund for the unauthorized and excess charges, and the Commission and TransCore continue to earn interest on the funds that were refunded to her E-ZPass account. (*Id.* ¶ 77.)

On April 28, 2021, Plaintiff filed a putative class action complaint in the Pennsylvania Court of Common Pleas of Dauphin County. (Doc. 1-2.) On June 14, 2021, TransCore removed the action to this court. After preliminary motion practice, Plaintiff filed an amended complaint on May 19, 2023. (Doc. 43.) According to the amended complaint, Defendants unlawfully charged Plaintiff and others with E-ZPass transponders that were properly affixed excessive fines without any meaningful warning or notice. The amended complaint alleges that, in many cases, the unlawful charges reported to Defendants were caused by incompatible E-ZPass technology, and attempts by consumers to appeal the fines ran head long into a

complicated dispute process and customer service representatives who provided incorrect and misleading information. Even when a refund was secured, the automatic replenishment feature of E-ZPass, resulted in funds being transferred from the consumer's bank account to their pre-paid E-ZPass account, on which Defendants earned interest. The amended complaint also alleges that TransCore intentionally and wrongfully assessed V-Tolls as well as V-Tolls that Plaintiff was unable to dispute. (*Id.* ¶¶ 182, 184.) Plaintiff seeks judgment against Defendants for monetary and declaratory relief on behalf of herself and others similarly situated. (*Id.* ¶ 99.)

Against TransCore, Plaintiff claims: (1) a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); (2) fraudulent concealment (Count II); (3) fraudulent misrepresentation (Count III); (4) breach of contract (Count IV); (5) conversion (Count V); and (6) unjust enrichment (Count VI). Against the Commission, Plaintiff claims: (1) unjust enrichment (Count VI) and (2) negligent conversion (Count VII). Additionally, Plaintiff seeks a declaratory judgment (Count VIII) against both Defendants as to whether TransCore, as agent of the Commission, may assess penalties and fines such as V-Tolls.

Defendants have moved to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. (Docs. 48, 50.) The motions have been fully briefed and are ripe for review.

## II.   STANDARD OF REVIEW

"It is an elementary principle that federal courts are courts of limited jurisdiction, empowered to hear cases only as provided for under Article III of the Constitution and congressional enactments pursuant thereto." *Employers Ins. of Wausau v. Crown Cork & Seal, Co., Inc.*, 905 F.2d 42, 45 (3d Cir. 1999). "A motion to dismiss under Rule 12(b)(1) challenges the jurisdiction of the court to address the merits of the plaintiff's complaint." *Vieth v. Pennsylvania*, 188 F.Supp.2d 532, 537 (M.D. Pa. 2002) (quoting *Ballenger v. Applied Digital Solutions, Inc.*, 189 F.Supp.2d 196, 199 (D. Del. 2002)). When presented with a Rule 12(b)(1) motion, the plaintiff "will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). "When reviewing a 12(b)(6) motion, [the court] 'accept[s] as true all well-pled factual

allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96–97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). But "[t]he court is not required to draw unreasonable inferences" from the facts. 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## III.  **DISCUSSION**

Plaintiff brings a number of claims, some of which overlap, sounding in contract, tort, and quasi-contract. The court will address each claim in turn.

1.    **Claims Against TransCore**

    a.   Breach of Contract

TransCore argues that Plaintiff fails to state a claim for breach of contract against it. In Pennsylvania, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages." *City of Allentown v. Lehigh Cty. Auth.*, 222 A.3d 1152, 1157 (Pa. Super. Ct. 2019) (quoting *Reformed Church of Ascension v. Theodore Hooven & Sons, Inc.*, 764 A.2d 1106, 1109 (Pa. Super. Ct. 2000)). A plaintiff may "assert the existence of an express, written contract either by setting it forth verbatim in the complaint . . . [or] 'attach[ing] a copy as an exhibit, or plead[ing] it according to its legal effect.'" *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 1:06-CV-1812, 2009 WL 1033601, at *3 (E.D. Pa. Apr. 15, 2009) (quoting *Pierce v. Montgomery Cnty. Opportunity Bd., Inc.*, 884 F. Supp. 965, 970 (E.D. Pa. 1995)); Fed. R. Civ. P 8(a). Privity of contract must exist for a defendant to ultimately be liable for a breach of the underlying contract. *Electron Energy Corp. v. Short*, 597 A.2d 175, 177 (Pa. Super. Ct. 1991), *aff'd*, 618 A.2d 395 (Pa. 1993).

Here, Plaintiff does not plead privity of contract between herself and TransCore, but rather between herself and the Commission by way of the Agreement. (Doc. 43 ¶¶ 16 n. 3, 158-59.) She alleges that the Agreement permitted

the Commission to deduct tolls for her travel on toll roads, and that TransCore, on

behalf of the Commission, breached the contract through excessive charges and

conduct that otherwise breached the implied covenant of good faith and fair dealing.

(*See generally* ¶¶ 163-171.) It is well settled, however, that an authorized agent

cannot be held liable for breach of contract executed between a third party and a

disclosed principal unless an agent agrees with the third party to be held liable.

*Scungio Borst & Assocs. V. 410 Shurs Lane Developers, LLC*, 146 A.3d 232, 240

(Pa. 2016) (collecting cases supporting the proposition that this "is a basic tenet of

agency law."). As a result, Plaintiff cannot use TransCore's alleged status as an agent

of the Commission to hold it liable under the Commission's agreement with

Plaintiff.

To get around this plain hurdle, Plaintiff suggests that TransCore is the

intended third-party beneficiary[2] of the Agreement between Plaintiff and the

Commission. (Doc. 43, ¶¶ 160, 167.) However, "the concept of a third-party

beneficiary exists to give intended beneficiaries, under certain circumstances,

standing to bring suit to obtain the benefits in question." *Konyk*, 183 A.3d at 988.

"[I]t does not exist to impose judicially-enforceable obligations on a person or entity

---

[2] Plaintiff does not plead facts to support that TransCore is a third-party beneficiary. Such status requires "both parties to the contract [to] express an intention to benefit the third party and that intention [to] appear[ ] in the contract." *Konyk v. Pennsylvania State Police*, 183 A.3d 981, 987–88 (Pa. 2018). Plaintiff has made no such allegations, and merely asserts third-party beneficiary status as a legal conclusion. (Am. Compl. ¶¶ 167, 168).

who was not a party to the contract." *Id.* Thus, "the third-party beneficiary, who did not sign the contract, is not liable for either signatory's performance and has no contractual obligations to either." *Id.* (citation omitted). As such, Plaintiff's claim for breach of contract against TransCore fails as a matter of law.[3]

b. Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL)

"[T]o maintain a cause of action under the UTPCPL, a consumer must show that (1) she purchased or leased the good primarily for consumer purposes, (2) she suffered some ascertainable loss, and (3) the loss resulted from an unlawful method, act, or practice under the statute." *Chandler v. L'Oreal USA, Inc.*, 340 F. Supp. 3d 551, 567 (W.D. Pa. 2018), aff'd, 774 F. App'x 752 (3d Cir. 2019); *see also* 73 Pa. Cons. Stat. § 201-9.2. "Pennsylvania law also requires a plaintiff alleging violations under the UTPCPL to prove that he justifiably relied on defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance." *Chandler*, 340 F. Supp. 3d at 567 (quotation omitted). This "justifiable reliance" requirement applies no matter the misconduct a plaintiff alleges gave rise to a UTPCPL violation. *See Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 465 (E.D. Pa. 2009); *see also Santana Prod., Inc. v. Bobrick Washroom Equip., Inc.*, 401

---

[3] Plaintiff's claim for a declaratory judgment will also be dismissed as it is wholly duplicative of her breach of contract claim. *See Contra Winslow v. Progressive Specialty Insurance Co*., Inc., 2018 WL 6527323, at *7 (M.D. Pa. Dec. 12, 2018) (dismissing declaratory judgment claim that was duplicative of underlying breach of contract claim).

F.3d 123, 136 (3d Cir. 2005) ("The Supreme Court of Pennsylvania has held that a plaintiff bringing an action under the UTPCPL must prove the common law fraud elements of reliance and causation with respect to all subsections of the UTPCPL.") (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 446 (Pa. 2001)). Plaintiff fails to adequately allege these elements.

First, Plaintiff has failed to plausibly plead that TransCore committed any unlawful method, act, or practice. Rather than identifying TransCore's alleged wrongful conduct with any specificity, the amended complaint provides only a verbatim recitation of various categories of acts defined as "unfair or deceptive acts or practices" in the UTPCPL. (Compare Doc. 43 ¶ 124 (a–e) with 73 Pa. Cons. Stat. § 201-2((4)(ii, v, ix, xiv, xxi)). Specifically, Plaintiff has failed to plead the facts necessary to put TransCore on notice of what specific acts she alleges violated the UTPCPL—much less to make her claim plausible. In particular, the amended complaint fails to allege: what "approval, characteristics, ingredients, uses, benefits or quantities" Plaintiff alleges that the transponders did not have and how TransCore represented otherwise (Doc. 43 ¶ 124(b)); what advertisements TransCore created or disseminated and how they misrepresented what TransCore intended to "sell" (*id.* ¶ 124(c)); 3. what "written guarantee or warranty" TransCore failed to comply with and how TransCore failed to comply (*id.* ¶ 124(d)); and what "other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding"

TransCore engaged in (*id.* ¶ 124(e)). *Twombly* and *Iqbal* require more than the unsubstantiated allegations offered in the amended complaint to state a plausible claim for relief. *See Seldon*, 647 F. Supp. 2d at 466 (noting UTPCPL claims "fail[ed] for lack of any supporting factual allegations").

Second, the only act for which the amended complaint provides any supporting factual allegations cannot support a claim under the UTPCPL. Plaintiff alleges that TransCore misrepresented its "source, sponsorship, approval, or certification." (Am. Compl. ¶ 124(a), (b)). The court assumes this refers back to Plaintiff's allegations that TransCore's operation of the customer service center caused likelihood of confusion between TransCore and the Commission, and that TransCore suggested that "it was part of the Commission" and acted under the Commission's authority. (*See id.* ¶¶ 78, 120, 121). However, taking the allegations of the amended complaint as true, TransCore did act under the Commission's authority and as the agent of the Commission, which renders these alleged statements non-deceptive. (*See id.* ¶¶ 1, 26, 76, 167, 179). Further, the amended complaint never explains how Plaintiff (or anyone else) was harmed or justifiably relied on an alleged failure to disclose that TransCore was a separate entity working on behalf of the Commission.

Third, Plaintiff has not pled that she justifiably relied on any allegedly unlawful conduct by TransCore. In a lengthy amended complaint, Plaintiff alleges

reliance only once and in a cursory fashion: "Plaintiff and others similarly situated relied on the fraudulent misrepresentations as communicated to them directly from Defendant Transcore through [the customer service center]." (*Id.* ¶ 153.) Plaintiff does not explain what particular representations she relied upon, how she relied upon them, or why that reliance was justifiable. As a result, Plaintiff has failed to state a plausible claim under the UTPCPL. *See Seldon*, 647 F. Supp. 2d at 468.

Fourth, and finally, Plaintiff's allegation that TransCore violated the UTPCPL by engaging in fraudulent, rather than merely deceptive, conduct is subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Seldon*, 647 F. Supp. 2d at 469. This requires alleging "the date, time and place of the alleged fraud or otherwise inject[ing] precision or some measure of substantiation into [the] fraud allegation.'" *Kee v. Zimmer, Inc.*, 871 F. Supp. 2d 405, 412 (E.D. Pa. 2012) (quoting *Frederico*, 507 F.3d at 200). Plaintiff fails to satisfy this standard as she does not identify with specificity even one alleged false or misleading statement, much less who said it, when it was said, and to whom. Plaintiff's vague allegations thus are insufficient to state a claim under § 201-2(4)(xxi). *See In re Shop-Vac Mktg. & Sales Pracs. Litig.*, 964 F. Supp. 2d at 366–67 (dismissing consumer fraud claims for failure to satisfy Rule 9(b)).

b.  Fraud Claims

For similar reasons, Plaintiff's fraud claims, fraudulent misrepresentation and fraudulent concealment, are insufficiently plead. The elements of a fraudulent misrepresentation claim are:

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) a resulting injury proximately caused by the reliance.

*Gaines v. Krawczyk*, 354 F. Supp.2d 573, 585 (W.D. Pa. 2004). Fraudulent concealment "has the same elements except an intentional concealment calculated to deceive must be shown instead of an affirmative misrepresentation." *Id.* In addition, a plaintiff must also "show a special relationship that would give rise to a duty to speak between them and the party that fraudulently concealed information." *Marcum v. Columbia Gas Transmission, LLC.*, 423 F. Supp. 3d 115, 121 (E.D. Pa. 2019).

Both of Plaintiff's fraud claims also require plausible allegations of scienter, *i.e.*, fraudulent intent. *See Iqbal*, 556 U.S. at 686–87 ("Rule 9 merely excuses a party from pleading … intent under an elevated pleading standard. It does not give him license to evade the less rigid—though still operative—strictures of Rule 8."). In other words, although "state of mind may be averred generally, plaintiffs must still allege facts that show the court their basis for inferring that the defendants acted with

'scienter.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997).

In conclusory fashion, Plaintiff alleges that TransCore had intent to defraud her by misrepresenting that she would not have to pay higher toll rates and by concealing from her that her transponder was not working. But that conclusory allegation of intent, deficient in its own right, *Morse*, 132 F.3d at 906; *see also U.S., ex. rel. FLFMC, LLC v. William Bounds, Ltd.*, Civ. No. 10-420, 2010 WL 4788554, at *5 (W.D. Pa. Nov. 17, 2010), is directly refuted by Plaintiff's contract with the Commission and her other allegations. Specifically, the contract between Plaintiff and the Commission states that she would be responsible for payment of V-Tolls if her transponder was not read correctly. Similarly, Plaintiff's allegation that the customer service representative told her that her transponder "needed to be replaced" (Doc. 43 ¶ 91)—the very information Plaintiff claims was concealed—defeats any allegation that TransCore intended to defraud Plaintiff. The fact that the customer service representative also hypothesized that Plaintiff's transponder may be incorrectly mounted does not create a reasonable inference of fraudulent intent. The only reasonable inference was that the representative was doing as he or she was supposed to do: troubleshoot the situation and provide Plaintiff with possible solutions. Those are reasonable, not fraudulent, actions. Thus, Plaintiff's allegations

do not plausibly show that the customer services representatives were knowingly misrepresenting or concealing facts with the intent to mislead her. Accordingly, Plaintiff's claims for fraud will be dismissed.

d. Conversion

In Pennsylvania, conversion is defined as "the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Premier Payments Online, Inc. v. Payment Sys. Worldwide*, 848 F.Supp.2d 513, 529 (E.D. Pa. 2012) (quoting *Francis J. Bernhardt, III, P.C. v. Needleman*, 705 A.2d 875, 879 (Pa. Super. Ct. 1997)). Plaintiff's claim for conversion is based on the notion that Defendants overcharged her for tolls and fines when her transponder did not register properly. As explained above, however, Plaintiff affirmatively consented to tolls and fines being charged in these circumstances. Because an owner's consent defeats a claim for conversion, Plaintiff has failed to state a plausible claim.

e. Unjust Enrichment

Plaintiff also fails to plausibly allege a claim for unjust enrichment against TransCore. Under Pennsylvania law, an unjust enrichment claim requires the plaintiff to show that she "1) conferred benefits on the defendant, 2) the defendant appreciated such benefits, and 3) the benefits were accepted and retained under such circumstances that it would be inequitable for the defendant to retain the benefit

without the payment of value." *Salvitti v. Lascelles*, 669 F. Supp. 3d 405, 412 (E.D. Pa. 2023) (citations and quotation marks omitted). Importantly, "a claim for unjust enrichment cannot be made simply because the defendant may have been benefited in some way." *Pa. State Emps. Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 331 (M.D. Pa. 2005). Thus, courts have dismissed unjust enrichment claims where the plaintiff was "fulfilling its own [contractual] obligations" when it provided property to the defendant. *Id.*

The amended complaint fails to plausibly allege these elements. While Plaintiff states that TransCore "collected" tolls and fees, she also alleges that TransCore did so on behalf of the Commission. (Doc. 43 ¶¶ 26, 187.) "[A]ny benefit is measured by the defendant's gain, not the plaintiff's loss." *Pennsylvania State Emps.*, 398 F. Supp. 2d at 331. Nothing in the amended complaint leads to a reasonable inference that TransCore itself retained the monies collected. Instead, it contains only the barest allegation that TransCore "retains and is enriched by significant shares" of the fees, without explaining any reason for that leap. (Doc. 43 ¶ 81.) Thus, Plaintiff has not plausibly pled that TransCore was unjustly enriched by its collection of fees on behalf of the Commission. Further, Plaintiff made payments through her E-ZPass account due to a contractual duty to do so. The notion that TransCore may have somehow incidentally benefitted from Plaintiff fulfilling her

duties is not sufficient to sustain an unjust enrichment claim. *See Pennsylvania State Emps.*, 398 F. Supp. 2d at 331. Thus, this count will also be dismissed.

2. **Claims Against the Pennsylvania Turnpike Commission**

a.  Unjust Enrichment

Plaintiff also brings an unjust enrichment claim against the Commission, which is necessarily different than that against Transcore, given the contractual relationship between the Plaintiff and the Commission. As noted previously, a claim of unjust enrichment will not lie where a valid contact or written agreement exists between the parties. *Wilson*, 895 A.2d at 1254 (quoting *Third Nat'l & Trust Co. of Scranton v. Lehigh Valley Coal Co.*, 44 A.2d 571, 574 (Pa 1945)). In other words, where "the parties' transaction was fully delineated within the confines of the written [contract] the existence of the written agreement would confine [the plaintiff] to a contract remedy and preclude a claim of quasi-contract." *Villoresi v. Femminella*, 856 A.2d 78, 84-85 (Pa. Super. 2004). Further, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014).

Here, neither Plaintiff nor the Commission question the existence or validity of the Agreement and Plaintiff has not alleged conduct that is outside the bounds of

the Agreement. The unjust enrichment claim against the Commission will therefore be dismissed with prejudice.

b.  Negligent Conversion

Next, Plaintiff brings a claim of negligent conversion against the Commission. Whether this claim exists at all under Pennsylvania law is unclear, but even accepting that a claim for negligent conversion exists, it would need to overcome the Commission's sovereign immunity.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Pursuant to this amendment, the Supreme Court "has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974) (citations omitted). An agency of state government is considered a part of the state for Eleventh Amendment purposes. *See Thorpe v. New Jersey*, 246 F. App'x 86, 87 (3d Cir. 2007) ("The Eleventh Amendment of the U.S. Constitution protects a state or state agency from a suit brought in federal court by one of its own citizens regardless of the relief sought."). States can and do waive sovereign immunity, and the Pennsylvania General Assembly has long decided to waive sovereign immunity for specific

negligence claims. 42 Pa. C.S. § 8522. Thus, the Commission is immune from Plaintiff's tort claim unless it sounds in negligence and fits within one of Pennsylvania's ten categories in which it waives sovereign immunity delineated in Section 8522.

Reading the amended complaint as a whole, Plaintiff appears to allege only intentional conduct on the part of the Commission but couches the claim as one sounding in negligence as an end run around the Commission's sovereign immunity. As Plaintiff alleges that the V-Tolls were intentionally charged, the claim is more properly one for the intentional tort of conversion, and the Commonwealth has not waived sovereign immunity for such claims. *See Sutton v. Bickell*, 220 A.3d 1027, 1035 (Pa 2019); *Johnson v. Wetzel*, 238 A.3d 1172, 1182 (Pa. 2020). Accordingly, Plaintiff's negligent conversion claim against the Commission will be dismissed.

The final issue is whether Plaintiff should be granted leave to amend her amended complaint. Due to the applicable liberal pleading standard, a plaintiff should generally be granted leave to amend before a court dismisses a claim that is merely deficient. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). The Federal Rules of Civil Procedure allow for amendments to be granted liberally in light of the "principle that the purpose of pleading is to facilitate a proper decision on the merits." *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (citation and quotation marks omitted). The court may, however, deny leave to amend where there

is "undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *See Id.* The court may also deny leave to amend where the proposed amendment would be futile—that is, where the pleading, "as amended, would fail to state a claim upon which relief could be granted." *See In re NAHC, Inc. Sec. Litig*., 306 F.3d 1314, 1332 (3d Cir. 2002) (citations and quotation marks omitted). In accordance with this standard, the court concludes that it would be futile to grant Plaintiff leave to refile with respect to Counts IV, V, VI, and VII. The other claims will be dismissed without prejudice to Plaintiff's right to file an amended complaint within thirty days of this order.

**IV.   Conclusion**

For the reasons set forth above, and in accordance with the forthcoming order, both motions will be granted.

/s/Sylvia H. Rambo

Sylvia H. Rambo
United States District Judge

Dated: August 29, 2024

22