UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JULIE E. THOMAS (ON BEHALF OF HERSELF AND THOSE SIMILARLY SITUATIONED), <br><br>Plaintiff, <br><br>v. <br><br>TRANSCORE, LP., et al., <br><br>Defendants. | CIVIL ACTION NO. 3:21-CV-1040 <br><br>(SAPORITO, J.) |

## MEMORANDUM

On April 28, 2021, the plaintiff Julie Thomas filed a class action complaint against the defendants Pennsylvania Turnpike Commission ("Commission") and TransCore for various claims concerning improperly charged "V-Tolls," a flat toll rate utilized in situations where a driver's transponder fails to be identified as an E-ZPass customer. (Doc. 1). On May 19, 2023, the plaintiff filed an amended complaint against TransCore for (1) a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count I); (2) fraudulent concealment (Count II); (3) fraudulent misrepresentation (Count III); (4) breach of contract (Count VI); (5) conversion (Count V); and (6) unjust enrichment (Count VI). (Doc. 43). It further alleged (1) unjust enrichment (Count VI)

and (2) negligent conversion (Count VII) claims against the Commission. *Id.* The defendants, in turn, moved to dismiss the amended complaint for lack of jurisdiction and failure to state a claim. (Docs. 48, 50).

On August 29, 2024, the Court granted the defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 65). Specifically, the Court dismissed Counts I through III and VIII without prejudice and Counts IV through VII with prejudice. *Id.* It additionally granted the plaintiff leave to amend within thirty days of the Order. *Id.* The plaintiff, however, filed a motion seeking leave to amend to replead the claims the Court dismissed with prejudice on September 27, 2024. (Doc. 66). This matter is now ripe.

I. **Legal Standard**

It is first important to discuss which Federal Rules of Civil Procedure apply to the current motion. The defendants argue that the plaintiff's motion to amend is, in actuality, a motion for reconsideration under Rule 60(b) of the Federal Rules of Civil Procedure (Docs. 68, 69). In turn, Local Rule 7.10 specifies that a motion for reconsideration must be filed within 14 days of the challenged decision. L.R. 7.10. The

defendants thus argue the plaintiff's challenge is time-barred, as the filing occurred approximately twenty-nine days after the Court's original granting of the defendants' motions to dismiss. (Doc. 65).

Rule 60(b) does not apply in this instance, however, because the order at issue is not a final judgment or order. *See* Fed. R. Civ. P. 60(b) ("[T]he court may relieve a party or its legal representatives from a *final* judgment, order, or proceeding"). Instead, the plaintiff's motion should be considered pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, as it deals with the reconsideration of an interlocutory order. *See Qazizadeh v. Pinnacle Health Sys.*, 214 F. Supp. 3d 292, 295 (M.D. Pa. 2016) ("[M]otions for reconsideration of interlocutory orders—whether denials of summary judgment, grants of partial summary judgment, or any other non-final orders—are motions under Federal Rule of Civil Procedure 54(b).").

Under Rule 54(b), "[a]n order that does not dispose of every claim in an action 'may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.'" *Clark Distrib. Sys., Inc. v. ALG Direct, Inc.*, 12 F. Supp. 3d 702, 717 (M.D. Pa. 2014) (quoting Fed. R. Civ. P. 54(b)). Here, the plaintiff filed a motion

for leave to amend. (Doc. 66). Leave should be granted absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed undue prejudice to the opposite party by virtue of the allowance of the amendment, futility of amendment, etc.". *Forman v. Davis*, 371 U.S. 178, 182 (1962). "Futility of amendment means that the complaint as amended does not state a claim upon which relief can be granted." *Doe v. Div. of Youth and Fam. Servs.*, 148 F.Supp.2d 462, 477 (D.N.J. 2001). Moreover, an amendment is futile if "a proposed amended complaint is 'frivolous or advances a claim or defense that is legally insufficient on its face.'" *Harris v. Steadman,* 160 F. Supp. 3d 814, 817 (E.D. Pa. 2016) (quoting *Thomas v. SmithKline Beecham Corp.*, No. 00-2948, 2002 WL 32341172, at *3 (E.D. Pa. Sept. 5, 2002)). Therefore, the newly asserted claim must appear to be "sufficiently well-grounded in fact or law." *Doe*, 148 F. Supp. 2d at 477.

## II. Discussion

The plaintiff asserts that her previously-dismissed claims with prejudice are now amended and sufficiently well-grounded in fact and law. These claims are as follows: (1) breach of contract against TransCore

(Count IV); (2) conversion against TransCore (Count V); (3) unjust enrichment against TransCore and the Commission; and (4) negligent conversion against the Commission (Count VII).

### A. Breach of Contract Against TransCore

The Court previously dismissed the plaintiff's breach of contract claim against TransCore, holding that the plaintiff did not allege privity with TransCore and that TransCore was not the intended third-party beneficiary of a contract between the plaintiff and the Commission. (Doc. 65). The plaintiff now contends that its amendment cures those deficiencies by alleging that the plaintiff, who is in privity with the Commission, is the intended third-party beneficiary of the contracts between TransCore and the Commission to administer the E-ZPass system. (Doc. 66). The defendants conversely argue that the plaintiff has failed to plead facts to support she is a third-party beneficiary. We agree with the defendants.

A contract creates a third-party beneficiary under Pennsylvania law when its language affirmatively indicates mutual intent to benefit that third-party. *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F. Supp. 2d 515, 527 (E.D. Pa. 2011). However, as an exception

to that rule, Pennsylvania has adopted § 302 of the Restatement (Second) of Contracts, under which a contract can create a third-party beneficiary in the absence of language demonstrating mutual intent. *Id.* A party may attain third-party beneficiary status under § 302 if "the circumstances are so compelling that recognition of the beneficiary's right is appropriate to effectuate the intention of the parties, and … the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance." *Scarpitti v. Weborg*, 530 Pa. 366, 371, 609 A.2d 147, 150 (1992) (citing Restatement (Second) of Contracts § 302).

The plaintiff has not provided proof of any language affirmatively indicating mutual intent to benefit herself or others in similar situations. The plaintiff has attached a copy of the Commission's CSC/VPC Agreement with TransCore in support of her claim that she is an intended third-party beneficiary. The contract, however, expressly rejects any third-party beneficiaries, as it states "[n]othing provided herein will create any rights in any third party as provided in the Agreement or any obligation on the part of the Commissioner to any third party." Numerous Third Circuit courts have permitted parties to a contract to expressly disclaim the existence of intended third-party beneficiaries. *In re NCB*

*Mgmt. Servs., Inc. Data Breach Litig.*, No. CV 23-1236, 2024 WL 4160349, at *7 (E.D. Pa. Sept. 11, 2024); *see Pennsylvania State Emps. Credit Union v. Fifth Third Bank,* 398 F. Supp. 2d 317, 324 (M.D. Pa. 2005) ("While section 302 recognizes that a nonsignatory to a contract can be an intended beneficiary of the contract if certain conditions are met, it recognizes the right of the contracting parties to exclude third parties from invoking the benefits of their agreement."); *see also Gannon v. Baldt Anchor & Chain,* 459 F. Supp. 457, 459 (E.D. Pa.), *aff'd,* 588 F.2d 820 (3d Cir. 1978) (finding that an employee was not a third-party beneficiary when an agreement expressly excluded an employee in the plaintiff's category). Indeed, these courts have even upheld contractual express disclaimers when additional language may have implied a third-party beneficiary. *See Gee v. Eberble,* 279 Pa. Super. 101, 110, 420 A.2d 1050, 1055 n.4 (1980) (holding that an express disclaimer defeated a third-party beneficiary claim despite other contract language from which intent to benefit claimant could be inferred). For this reason, we reject the plaintiff's third-party beneficiary argument due to the contract's express disclaimer. The disclaimer precludes us from considering a potential third-party beneficiary claim under § 302. We rule that the

complaint does not state a claim upon which relief can be granted and an amendment to that claim proves futile.

### B. Conversion Against TransCore

The Court previously dismissed the plaintiff's conversion claim against TransCore with prejudice. (Doc. 65). "Conversion occurs when a party deprives the owner from his right of or use of or possession of a chattel, without the owner's consent and without lawful justification." *Montgomery v. Fed. Ins. Co.*, 836 F. Supp. 292, 300 (1993). The Court found that the plaintiff had affirmatively agreed and consented to tolls and fines being charged in the E-ZPass process, and therefore, could not successfully plead a conversion claim against TransCore. (Doc. 65). The plaintiff's amended complaint now alleges that TransCore and the Commission had no authority to collect penalties or fees in addition to the toll charged, and thus, the plaintiff did not consent to the withdrawal of funds. (Doc. 66).

Nevertheless, the plaintiff's amended complaint seemingly ignores the Court's previous holding in its original dismissal of the claim. The plaintiff's contract with the defendant specifically shows her consent to the terms of the E-ZPass contract where she expressly agreed to pay the

fines and tolls stemming from her driving, regardless of whether the proper toll registered. As the Court held before, because an owner's consent defeats a claim for conversion, the plaintiff's amended complaint has failed to state a plausible claim.

C. *Unjust Enrichment Against the Commission and TransCore*

The Court previously dismissed with prejudice both of the plaintiff's claims for unjust enrichment against the defendants for different reasons. It first turned to the plaintiff's claim against the Commission. It noted that a claim of unjust enrichment will not lie where a valid contract or written agreement exists between the parties. (Doc. 65); *see Villoresi v. Femminella,* 2004 Pa. Super. 256, 856 A.2d 78, 84–85 (2004) (emphasizing where "the parties' transaction was fully delineated within the confines of the written [contract] the existence of the written agreement would confine [the plaintiff] to a contract remedy and preclude a claim of quasi-contract."). In addition, the Court further articulated that "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014). The Court

ultimately found that because the plaintiff neither questioned the existence of a contract nor alleged conduct outside the bounds of the contract, the unjust enrichment claim against the Commission should be dismissed with prejudice.

The plaintiff has amended her complaint to allege that the "authority under the parties' contract to assess V-Tolls is disputed–and therefore, whether a contract governs Plaintiff's claims is disputed." (Doc. 66). Thus, she alleges, the disputed authority leads to a potential unjust enrichment claim. *Id.* This amended claim, however, does not resolve the deficiencies seen in the plaintiff's first complaint.

First, while the plaintiff may dispute the authority given to the defendants by terms of the contract, the plaintiff does not dispute the prerequisite existence of the contract itself. As the Court previously held, an unjust enrichment claim is only available when the validity of a contract is disputed, not the terms of the contract. *See Grudkowski,* 556 F. App'x at 170 n.8 ("[P]leading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy"); *see also Heritage Valley Health Sys., Inc. v. Nuance Commc'ns,*

*Inc.*, 479 F. Supp. 3d 175, 179 (W.D. Pa. 2020) (dismissing an unjust enrichment claim due to the plaintiff's claim falling to contract interpretation).

Moreover, the plaintiff has failed to amend her complaint to identify any conduct outside the bounds of the contract. As the Court held, the plaintiff expressly agreed to pay the fines and tolls stemming from her driving, regardless of whether the proper toll registered. She has additionally acknowledged "a valid and enforceable Agreement between the Plaintiff and the Commission." (Doc. 66). Therefore, we find that the plaintiff has not cured any of her claim's deficiencies, and thus, she cannot support a claim of unjust enrichment against the Committee.

Regarding the plaintiff's claim against TransCore, the Court additionally dismissed the claim with prejudice as the plaintiff "ha[d] not plausibly pled that TransCore was unjustly enriched by its collection of fees on behalf of the Commission." (Doc. 65). It identified that the plaintiff made payments through her E-ZPass account due to her contractual duty, and "[t]he notion that TransCore may have somehow incidentally benefitted from Plaintiff fulfilling her duties is not sufficient to sustain an unjust enrichment claim." (Doc. 65). The plaintiff has amended her

complaint to allege that "Trans[C]ore and the Commission split the proceeds from the unauthorized fees and penalties ... pursuant to the partnership agreements between them." (Doc. 66). While we do agree that the plaintiff's allegations of splitting the proceeds from unauthorized fees and penalties fairs far better than its original broad allegation that TransCore "retains and is enriched by shares" of fees (Doc. 43), we find that it still is not sufficient enough to sustain an unjust enrichment claim.

First, the plaintiff still has not combatted the Court's previous acknowledgment that the plaintiff made payments through her E-ZPass account due to a contractual duty, one that allowed the Court to dismiss with prejudice. As we have stated prior, the plaintiff agreed to the terms of her contract and paid the fees pursuant to the contract. *See Pa. State Emps. Credit Union v. Fifth Third Bank*, 398 F. Supp. 2d 317, 331 (M.D. Pa. 2005) (holding that an unjust enrichment claim failed because the plaintiff was "fulfilling its own [contractual] obligations.").

Second, the Court additionally held that the plaintiff did not allege that TransCore itself retained the monies collected, and the plaintiff's amended allegations do not dispute this holding. The new complaint

merely describes how the money was allegedly spent, rather than addressing the previously-mentioned possession deficiency. Indeed, the contract itself highlights that TransCore is paid "for Work and Deliverables on a cost-plus-net-fee basis, subject to an annual not-to-exceed amount," rather than a proportional amount that would benefit from a fee-splitting system as the plaintiff alleges. The plaintiff cannot point to any "documents incorporated into the complaint" to substantiate its allegation, *Tellabs, Inv. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007), and has offered no supporting evidence contrary to the terms of the contract to suggest a reasonable inference of her allegations of overcharging and fee-splitting. For these reasons, the plaintiff's claim suffers from the same deficiencies as its first complaint, and thus, the claim will be dismissed.

D.   *Negligent Conversion Against the Commission*

The plaintiff finally alleges a claim of negligent conversion against the Commission. The Court previously found that plaintiff's claim for negligence conversion failed because the plaintiff "appears to allege only intentional conduct on the part of the Commission...." (Doc. 65). For this reason, it held that "the claim is more properly one for the intentional

tort of conversion, and the Commonwealth has not waived sovereign immunity for such claims." *Id.* The plaintiff has since amended her complaint to allege numerous negligent acts by the Commission in the oversight, policies, and implementation of the E-ZPass system. (Doc. 66). We hold that the plaintiff's claim fails because it does not fall within an exception of sovereign immunity and thus cannot overcome the Commission's sovereign immunity.

Very few cases have come before the Court concerning a negligent conversion claim and thus, there is very little guidance on the matter. In general, conversion does not require proof of a specific intent to commit a wrong. *HRANEC Sheet Metal, Inc. v. Metalico Pittsburgh, Inc.*, 2014 Pa. Super 278, 107 A.3d 114, 119 (2014). "A claim of negligent conversion will lie under 42 Pa. C.S. § 8522(b)(3), which provides an exception to sovereign immunity for claims of negligence arising from '[t]he care, custody or control of personal property in the possession or control of Commonwealth parties, including ... property of persons held by a Commonwealth agency....'" *Borrero-Bejerano v. Dep't of Corr.*, No. 453 C.D. 2018, 2019 WL 489835, at *5 (Pa. Commw. Ct. Feb. 8, 2019) (quoting 42 Pa. C. S. § 8522(b)(3)). However, to invoke this exception, "the personal

property possessed or controlled by the Commonwealth party must directly cause, and not merely facilitate, the plaintiff's injuries." *Mazur v. Cuthbert*, 186 A.3d 490, 498 (Pa. Commw. Ct. 2018) (citing *Pa. State Police v. Klimek*, 839 A.2d 1173, 1175 (Pa. Cmmw. Ct. 2003)). We find that even taking the plaintiff's allegations as true, the Commonwealth's actions merely facilitated, and did not cause, the plaintiff's injuries.

The question at hand is whether the plaintiff's allegations, those that accuse the Commission of failing to "conduct any meaningful review or audits" or "failing to provide any meaning oversight" of TransCore, fit within the same category of those potential negligent conversion claims recognized by the Court. The answer is no. Pennsylvania courts have recognized that negligent conversion claims can concern those for monetary damages resulting directly from the negligent destruction or confiscation of personal property by Commonwealth officials. *See Shore v. Pennsylvania Dep't of Corr.*, 168 A.3d 374, 385 n.6 (Pa. Commw. Ct. 2017) (observing that good faith negligence in the destruction or confiscation of an inmate's photographs by state officials may invoke the personal property exception); *see also Borrero-Bejerano*, 2019 WL 489835 at *7 (holding that a plaintiff could proceed with his claim that prison

officials negligently contributed to the loss of his watch). The plaintiff has not alleged, however, that the Commonwealth directly destroyed or confiscated her property as seen in *Shore* or *Borrero-Bejerano*.

Instead, she alleges that the Commission's negligence concerning TransCore and its devices caused the confiscation of property, an allegation that fits more neatly in those receiving sovereign immunity by the Court. First, it is well settled that "alleged[ly] negligent, erroneous[,] and inaccurate examinations by a Commonwealth agency ... are outside the exceptions to sovereign immunity." *Bufford v. Pa. Dep't of Transp.*, 670 A.2d 751, 754 (Pa. Commw. Ct. 1996). The plaintiff alleges that the Commission's failure to participate in the oversight of monitoring, operating, or maintaining of the E-ZPass system contributed to the confiscating of its property. (Doc 66). In other words, the plaintiff maintains that the defendant's failure to examine caused her injuries. We hold that the failure to examine falls outside the exceptions to sovereign immunity for the same reason as erroneous, negligent, or inaccurate examinations: these reports (or lack of) merely facilitate an additional action that proves the direct cause of plaintiffs' injuries; they are not the cause themselves.

For example, in *Bufford v. Department of Transportation*, the plaintiff was detained by the police after they discovered that the plaintiff was driving with a suspended license. *Bufford*, 670 A.2d at 754. The plaintiff's driving privileges, however, had been suspended incorrectly and the plaintiff initiated litigation alleging that the Pennsylvania Department of Transportation had suspended his license negligently. *Id.* The court ultimately ruled that the personal property exception was not "a mechanism for the recovery of damages inflicted by administrative decision making and the negligent recordation of any information...." *Id.* at 755. It found it was the detaining itself that caused the direct injuries, not the Commission's incorrect examination of the plaintiff's driving record and administrative decision to suspend the license. The Commission's action merely facilitated a separate action that cause the alleged injuries.

Similarly, in *Garanin v. Scranton Housing Authority*, the plaintiff alleged negligence by the Scranton Housing Authority for the plaintiff's reliance on an inaccurate inspection report from the defendant and its employee. *Garanin v. Scranton Hous. Auth.*, 286 A.3d 401, 402 (Pa. Commw. Ct. 2022). The inspection revealed no problems with the heating

system, indicating that the property was suitable as Section 8 housing. *Id.* Therefore, the plaintiff obtained a property insurance policy from Erie Insurance based on that reliance, and when he later asserted a claim for damage to the property, the insurance company denied the claim with proof that the heating system was damaged before the plaintiff purchased the policy. *Id.* The court ruled that the erroneous report merely facilitated the plaintiff's injuries and fell outside the personal property exception to sovereign immunity. *Id.* Like *Bufford*, it was the third-party's rejection of an insurance claim, not the Housing Authority's erroneous inspection, that caused the plaintiff's injuries.

Here, the plaintiff's allegations mimic those in *Bufford* and *Garanin*. The plaintiff argues that the defendant's failure to inspect caused the incorrect confiscation of the plaintiff's funds. Even assuming the plaintiff's allegations as true, the defendant's actions still did not cause the plaintiff's injuries and thus fall outside the statutory exceptions for sovereign immunity. Indeed, the plaintiff takes issue with TransCore's equipment, not the Commission's administrative decisions, as the equipment itself allegedly failed to read her transponder, resulting in the withdrawal of funds. The defendant's alleged failure to "conduct

any meaningful review or audits" or "provide any meaning oversight" of TransCore's systems merely facilitated the third-party's action; it did not cause it.

## IV. Conclusion

For these reasons, the plaintiff's leave to amend those counts in the complaint which were dismissed with prejudice will be denied. An appropriate order follows.

Dated: November 18, 2024

*Joseph F. Saporito, Jr.*
JOSEPH F. SAPORITO, JR.
United States District Judge