IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JULIE E. THOMAS,** | : | CIVIL ACTION NO. 1:21-CV-1040 |
| | : | |
| Plaintiff | : | (Judge Neary) |
| | : | |
| v. | : | |
| | : | |
| **TRANSCORE, LP,** | : | |
| | : | |
| Defendant | : | |

## MEMORANDUM

If an action looks like breach of contract and has the same elements of breach of contract, it is breach of contract. And in Pennsylvania, the gist of the action doctrine prevents a party from recasting its contract action as a tort action. Because, at bottom, plaintiff Julie E. Thomas's claims against defendant TransCore, LP are assertions that she was charged more than was authorized by a contract, her claims are ones of contract and not tort. But TransCore does not have a contractual relationship with Thomas and so this case will be dismissed.

### I. Factual Background & Procedural History

The Pennsylvania Turnpike styles itself as "America's First Superhighway" and it is run by the Pennsylvania Turnpike Commission ("the Commission").[1] For much of the Turnpike's history, when motorists wished to use the road, they would have to pay a tollbooth attendant a cash toll. (Doc. 73 ¶ 38). Things changed in 2002

---

[1] America's First Superhighway Celebrates 85th Birthday, PA TURNPIKE (Oct. 1, 2025), https://www.paturnpike.com/news/details/2025/10/01/america-s-first-superhighway-celebrates-85th-birthday [https://perma.cc/4HM4-Q3DV].

when the Turnpike introduced the E-ZPass. (Id. ¶ 4). Motorists using an E-ZPass utilize a transponder which is registered to a specific vehicle and is connected to an E-ZPass account. (Id. ¶¶ 12, 39-41). Vehicles equipped with an E-ZPass drive under a system which detects the transponder and then the toll amount for the trip is automatically deducted from the account connected to the E-ZPass. (Id. ¶¶ 39, 42). Motorists must submit an application to receive an E-ZPass. (Doc. 11-1). Part of this application includes the E-ZPass agreement, which is between motorists and the Commission. (Id. at 5).

Though that agreement is between the Commission and motorists, the Commission relies on its private-sector partner, TransCore, to administer the E-ZPass system. (Doc. 73 ¶ 29). In fact, the Commission has effectively delegated all aspects of running the E-ZPass system to TransCore. (Id. ¶¶ 30-31). This includes collecting Turnpike tolls and assessing toll violations. (Id. ¶ 31h, i). A violation occurs, among other instances, when a motorist passes through a toll gate, but their E-ZPass transponder fails to register. When this happens, a motorist is charged a "V-Toll." (Id. ¶ 7). The V-Toll is a flat fee and was $5 per incident prior to 2019, and increased to $10 per incident on January 1, 2019. (Id. ¶ 8).

Plaintiff Julie Thomas has routinely driven on the Pennsylvania Turnpike using an E-ZPass transponder. According to the second amended complaint, Thomas opened an E-ZPass account with the Commission in 2012 and regularly used her transponder while driving on the Turnpike and other toll roads in the region. (Id. ¶ 112). In June 2019, Thomas noticed her E-ZPass account was being

2

charged far more than expected; after looking into it, she discovered that the additional assessments did not coincide with the rates she should have been charged for her corresponding travel. (Id. ¶¶ 116-18). For example, she noticed that her account had multiple $10 charges for short trips that should have cost her a fraction of that amount based on where she entered and exited the Turnpike. (Id. ¶ 118.) Each of these transactions were listed as V-Tolls. (Id. ¶ 119).

Upon discovering the excess tolls, Thomas contacted customer service to try to fix the issue, but the representative simply accused her of incorrectly mounting her transponder. (Id. ¶¶ 121). Thomas asserts she always had a correctly mounted transponder, yet was charged V-Tolls. (Id. ¶ 12). Despite trying resolve the problem with customer service, Thomas was never given a satisfactory answer for why she was being charged V-Tolls and she only continued to accumulate additional, unrefunded V-Tolls. (Id. ¶¶ 124-29).

Thereafter, she turned to the courts. Presently under consideration is Thomas's second amended complaint. In it, she only levies claims against TransCore, dropping the Commission as a defendant. The second amended complaint contains four claims: (1) a violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count I); (2) fraudulent concealment (Count II); (3) fraudulent misrepresentation (Count III); and a declaratory judgment (Count IV) relating to the E-ZPass agreement.

## II. Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief may be granted. See FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, [and] undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of

a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556). A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678.

### III. Discussion

TransCore asserts Thomas's claims are barred by the gist of the action doctrine. (Doc. 78 at 1). This doctrine prevents a party from "bring[ing] a tort claim for what is, in actuality, a claim for a breach of contract." Bruno v. Erie Ins. Co., 106 A.3d 48, 60 (Pa. 2014). It does not matter how a plaintiff labels her claims, what matters are the "substance of the allegations" themselves to determine if, in total, the gist of the plaintiff's action is one of contract or one of tort. Id. at 68. The Pennsylvania Supreme Court[2] gave a thorough analysis of the application of the gist of the action doctrine in the case of Bruno v. Erie Insurance Company.

There, the court said:

> If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts

---

[2] Both parties agree Pennsylvania law governs this action. (See Doc. 78 at 9; Doc. 82 at 4-5).

> establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

Id. (internal citations omitted). This analysis underscores that "the mere existence of a contract between two parties does not, *ipso facto,* classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." Id. at 69. Rather, the focus is on what type of duty the defendant allegedly breached—one to a specific individual per a contract, or one to society as a whole.

  Thomas asserts her claims are ones of fraud, not of contract. (Doc. 82 at 5-7). She argues the fundamental basis of her complaint is that TransCore fraudulently induced people like her to purchase an E-ZPass on the promise of lower tolls when in fact, she was charged more. (Id. at 6). TransCore, Thomas believes, has a general duty of candor to society and must not "misrepresent and conceal the actual fees" to E-ZPass patrons using the turnpike. (Id.).

  However, Thomas's attempts to recast her claims as fraud do not succeed. To see why, it is helpful to compare past instances where the Pennsylvania Supreme Court found the action was really one of contract, not tort, with the cases where a tort was found to be the ultimate action. In McCahan v. Hirst, plaintiff Andrew Hirst contracted with defendant John McCahan to store thirteen bushels of clover-seed. 7 Watts 175, 175-76, 1838 WL 3224, at *1 (Pa. 1838). However, Hirst alleged that due to "negligence and improper conduct," McCahan lost the clover-seed. Id. Despite these allegations of negligence, the court found Hirst's suit was one of

6

contract and not tort. Id. at 7 Watts 178-79, 1838 WL 3224, at *3. Because the crux of the complaint was that McCahan lost the clover-seed he was contractually obligated to store, the gist of that action was one of contract. Bruno, 106 A.3d at 63. It does not matter that Hirst may have been negligent in performing the contract, because McCahan was suing to recover the value of the clover-seed he entrusted to Hirst pursuant the contract, the case involved a "complete failure to perform duties originating from a contract." Id. at 63.

Decades later in the case Horney v. Nixon, the court confronted the issue of whether a theater's inability to seat a family at their ticketed seats constituted an action in contract or tort. 61 A. 1088, 1088-89 (Pa. 1905). After the family had purchased a specific group of tickets for a performance, the fire commission determined the theater needed to remove some seats to make the aisles wider. Id. at 1088. The theater then reissued tickets to patrons, but due to "some oversight," all of the tickets that had been purchased by the plaintiff family had been sold to other guests. Id. Regardless of this mishap, the fundamental duty in that action was to supply the seats the family originally contracted to purchase. Id. at 1089.

Conversely, in Zell v. Arnold, the Pennsylvania Supreme Court considered the case of George Arnold, who had contracted with Jacob Zell to construct a clover mill and dig a channel to divert water to the mill. 2 Pen. & W 292, 292, 1830 WL 3261, at *1 (Pa. 1830). However, Arnold alleged Zell did the construction work "so negligently, carelessly, and unskillfully" that the mill was completely inoperable. Id. The court held "[t]he gist of an action on the case like the present, is not a failure to

7

perform, but a failure to *perform* in a *workmanly* manner, which is a tort." Id. at 2 Pen. & W 294, 1830 WL 3261, at *3. Similarly, when a landlord promises to repair a porch during lease negotiations, fails to do so, and the porch collapses, the landlord is not liable for only breach of contract. Bruno, 106 A.3d at 107 (citing Reitmeyer v. Sprecher, 243 A.2d 395 (Pa. 1968)).

Now, consider a person who seeks cosmetic surgery. If, during the surgery, the surgeon is careless and causes damage to the person's body, that surgeon has committed a tort. Of course, those parties have been brought together by a contract, but the crux of that action is the surgeon owes everyone a duty of professionalism and by the surgeon's negligence, failed to uphold that professionalism in the course of the surgery. On the other hand, if the surgeon charges different rates, say $500 for "minor procedures" and $1,000 for "major procedures," and after a successful surgery, the parties dispute whether the surgery was minor or major, that is an action in contract. To determine which person prevails will necessarily depend on the definition of "minor" versus "major" as set forth in contract between the surgeon and the individual. The surgeon may have breached a duty to the patient by charging more than expected, but unlike the instance where surgeon caused harm, the breach of the duty in payment dispute is a contractual duty, not a general one.

Bringing these principles to Thomas's case, she is like a patient dissatisfied with the final cost of an otherwise successful procedure. As TransCore correctly points out, "[i]f TransCore charged Plaintiff contractually allowable amounts on behalf of the Commission, there is no harm to remedy from alleged incomplete

8

disclosures; if not, a breach of contract claim is the remedy." (Doc. 83 at 4-5). To the extent there was any "fraud" here, it would only be TransCore's failure to deliver the benefits promised by an agreement to use an E-ZPass. Trying to couch this action in fraud is like the family in <u>Horney</u> saying the theater defrauded them by offering different tickets than they had purchased. Framed this way, any breach of contract cause could be recast as a fraud case by arguing the defendant mislead the plaintiff about the end result of a contract. Further, as <u>McCahan</u> shows, a party's negligence in carrying out a contract does not transform the action from one of contract to one of tort.

The duty that was allegedly broken here was one to follow the terms of a contract; Thomas alleges she failed to receive the promised benefit of using an E-ZPass transponder. However, neither TransCore, nor the Commission for that matter, owe a general duty to society to charge a specific amount for using the Turnpike. Rather, what they may charge is defined by an agreement and any failure to charge the correct amount is a failure of the duty to abide be the agreement. Thus, this action is not one of tort, but one of contract.[3] And as the late Judge Sylvia H. Rambo has already found in this case, there is no contract between Thomas and TransCore. <u>Thomas v. TransCore, LP.</u>, No. 21-CV-1040, 2024 WL

---

[3] Because the court finds the gist of the action bars Thomas's claims against TransCore, the court does not opine on any of TransCore's alternative arguments in support of dismissal.

3993217, at *4 (M.D. Pa. Aug. 29, 2024). Consequently, Thomas's complaint fails to state any claims against TransCore.[4]

The only issue remaining is whether Thomas should be given yet another chance to amend her complaint. The present complaint is Thomas's third and her allegations have been subject to two motions to dismiss which have been ruled upon by the court. Additionally, this case is now stretching over its fourth year of proceedings. In consideration of Thomas's "repeated failure to cure deficiencies by amendments previously allowed" and the prejudice TransCore would face by continuing to litigate this four-year old case after two successful motions to dismiss, the court will dismiss Thomas's complaint with prejudice. See Foman v. Davis, 371 U.S. 178, 182 (1962).

---

[4] Rather than offer any new arguments for why its request for declaratory judgment should not be dismissed, Thomas incorporates by reference her earlier brief on this issue. (Doc. 82 at 15). This is in violation of the Middle District's local rules. See M.D. PA. L.R. 7.8(a). Additionally, Judge Rambo already rejected Thomas's arguments on this point. Thomas, 2024 WL 3993217, at *4 n.3. In light of Thomas's failure to offer any new argument on this point, the court will dismiss the request for declaratory judgment in accordance with the law-the-case doctrine. See Saint-Jean v. Palisades Interstate Park Comm'n, 49 F.4th 830, 836 (3d Cir. 2022) ("As a prudential principle, law of the case holds that a rule of law announced in a case should later be applied to the same issues in subsequent stages in the litigation.") (internal citation and quotation marks omitted).

## IV.    <u>Conclusion</u>

Julie E. Thomas contends she did not get what she signed-up for when she purchases an E-ZPass. Perhaps that is true. But to evaluate her claims, the specific terms of her bargain—the contract—is needed. She cannot recharacterize her claims as one of tort. Accordingly, her case will be dismissed.

/S/ <u>KELI M. NEARY</u>
Keli M. Neary
United States District Judge
Middle District of Pennsylvania

Dated:    December 31st, 2025